GENERAL CASTINGS CORPORATION, and
Employers Mutual Casualty Company, Plaintiffs-
Respondents,

v.

Lois WINSTEAD, Defendant-Appellant,†

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant.

Court of Appeals

No. 89-2205. Submitted on briefs May 2, 1990.—Decided May
23, 1990.

(Also reported in 457 N.W.2d 557.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David L. Weir* of *Zubrensky, Padden, Graf & Maloney* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Patti J. Kurth* and *Michael C. Frohman* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J. Lois Winstead, a former employee of the now defunct General Castings Corporation, appeals from a circuit court judgment reversing a decision and order of the Labor and Industry Review Commission (LIRC) awarding worker's compensation benefits to Winstead pursuant to sec. 102.565, Stats., for a nondisabling silicosis disease. Since Winstead's employment terminated because General Castings closed its foundry operation and not because of Winstead's nondisabling silicosis, we conclude the circuit court properly reversed the LIRC decision.

The facts are not disputed. General Castings operated an industrial foundry in Waukesha, Wisconsin. Winstead began working for General Castings at the age of twenty-one in November 1956. During his employment over the next thirty years, Winstead was extensively exposed to fumes from molds and to sand dust.

On January 30, 1987, General Castings shut down its foundry operations. As a result, all General Castings employees, including Winstead, were terminated. Prior to the termination, Winstead had not been treated for any lung problems or disease, nor did he have any reason to believe that his ability to perform foundry work was restricted because of such problems. Winstead did not learn of his silicosis disease until September 1987—after his employment with General Castings had concluded.

After the silicosis diagnosis, Winstead was medically instructed to not engage in foundry work. Winstead followed this advice and as a result suffered a wage loss. Winstead then initiated this claim pursuant to sec. 102.565(1), Stats., which allows the department to award wage loss compensation not to exceed $13,000 to an employee rendered susceptible to disability as the result of exposure to "toxic or hazardous substances or conditions" when such employee is "discharged from or ceases to continue the employment."

General Castings argued that the phrase "ceases to continue the employment" requires linkage between the employee's medical condition and the employment cessation. The Administrative Law Judge (ALJ) disagreed, concluding that the phrase "ceases to continue the employment" embraced the facts of this case where the employer, General Castings, had shut down its operations. Thus, the ALJ ruled that Winstead did not have to show that he ceased his employment with General Castings due to his nondisabling silicosis. Instead, the ALJ held that Winstead only had to "show that because of the silicosis he [Winstead] is unable to return to foundry work." The ALJ reasoned that to hold otherwise would render sec. 102.565(1), Stats., meaningless in a plant closure situation where the employee did not know of the nondisabling disease at the time of the shutdown.

The ALJ awarded Winstead $9928 in lost wages. LIRC affirmed the award.

General Castings sought judicial review. In its written decision, the circuit court noted the strong equitable arguments in favor of Winstead's position. However, after examining the statute and its history, the court concluded that the statutory language required that the employee's termination be linked to the specific employment which caused the susceptibility to the disease. The court therefore reversed the LIRC award. Winstead appeals to us.

We first address our standard of review. As to the circuit court ruling, our scope and standard of review is the same as that applied by the circuit court. *Probst v. LIRC,* 153 Wis. 2d 185, 190, 450 N.W.2d 478, 480 (Ct. App. 1989). This court owes no deference to the decision of the circuit court. *Id.*

This case requires us to interpret sec. 102.565(1), Stats. Where the interpretation of a statute is involved, a question of law is presented and we generally are not required to follow the agency interpretation. *Probst,* 153 Wis. 2d at 190, 450 N.W.2d at 480. However, when an administrative agency determination requires a value judgment premised upon the agency's expertise, we must accord the agency determination great weight, although it is not controlling. *Id.* We defer to such an agency conclusion if it is reasonable. *Id.*

However, sec. 102.565(1), Stats., has not previously been construed by the agency or the appellate courts of this state. The Wisconsin Supreme Court recently addressed whether the "great weight" deferential standard of review applies to an agency decision construing a statute which had not been previously interpreted by the

agency or the appellate courts in *Drivers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 452 N.W.2d 368 (1990) *(Drivers II). Drivers II* acknowledges the traditional "practical interpretation" rule—that great weight is to be given to statutory applications or interpretations that have a rational basis. *Id.* at 83, 452 N.W.2d at 371. This approach recognizes that regular and repeated interpretations of statutes or rules that have been applied in practice by an agency charged with the special duty of administering the statute are presumed to be premised upon some special expertise not acquired by the courts. *Id.* at 83, 452 N.W.2d at 371–72.

This court in *Drivers I* believed that deference was appropriate because the agency was charged with administering the statute in question. *Drivers Local No. 695 v. LIRC,* 147 Wis. 2d 640, 642, 433 N.W.2d 638, 640 (Ct. App. 1988) *(Drivers I), rev'd,* 154 Wis. 2d 75, 452 N.W.2d 368 (1990). Such deference was premised upon the agency's experience, technical competence and specialized knowledge in applying the statute. *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539 (1984); *see also Drivers II,* 154 Wis. 2d at 88, 452 N.W.2d at 374 (Abrahamson, J., dissenting). However, *Drivers II* clarifies that such deference is not appropriate where the statutory construction is not the result of a "course of uniform interpretation over a period of time." *Drivers II,* 154 Wis. 2d at 84, 452 N.W.2d at 372.

■
Section 102.565(1), Stats., in its present form, has not been previously interpreted by the agency or the appellate courts. Therefore, our standard of review pursuant to *Drivers II* is *de novo* and "we give the application of the statute to the facts a new look as a matter of

original statutory interpretation by this court." *Drivers II,* 154 Wis. 2d at 84, 452 N.W.2d at 372.

Section 102.565(1), Stats., reads in relevant part:

**Toxic or hazardous exposure; medical examination; conditions of liability.** (1) When an employe working subject to this chapter, as a result of exposure in the course of his or her employment over a period of time to toxic or hazardous substances or conditions, develops any clinically observable abnormality or condition which, on competent medical opinion, predisposes or renders the employe in any manner differentially susceptible to disability to such an extent that it is inadvisable for the employe to continue employment involving such exposure *and the employe is discharged from or ceases to continue the employment,* and suffers wage loss by reason of such discharge, or such cessation, the department may allow such sum as it deems just as compensation therefor, not exceeding $13,000. [Emphasis added.]

Winstead argues that the phrase "ceases to continue the employment" refers to his employment as a foundry worker generally and not to his specific employment as a foundry worker with General Castings. Thus, he reasons that his medical inability to pursue foundry work after General Castings' closure—not the closure itself—was the event which "ceased" his employment within the meaning of the statute. We disagree.

Winstead's construction views the phrase "ceases to continue the employment" in a vacuum without giving proper consideration to the entire language of the statute as a whole. In ascribing a meaning to the words of a statute, the words are to be considered in their context within the statutory section as a whole. *Falkner v. Northern States Power Co.,* 75 Wis. 2d 116, 124, 248

758

N.W.2d 885, 890 (1977). A statute should be construed to give effect to its leading idea and should be brought into harmony with its purpose. *State v. Wimmer,* 152 Wis. 2d 654, 660, 449 N.W.2d 621, 623 (Ct. App. 1989).

The "leading idea" and purpose of sec. 102.565(1), Stats., is to compensate an employee who develops a medically diagnosed condition which renders the employee susceptible to disability as the result of *employment* exposure to toxic or hazardous substances or conditions. Having established that this *employment*-related condition exists, the employee must additionally demonstrate: (1) that it is medically inadvisable to continue *the employment* involving *such* exposure; and (2) that the employee has been discharged from or has ceased *the employment. Id.*

The scheme and language of this statute clearly connotes that the word *employment,* as variously used in the statute, refers to the specific employment which caused the risk in the first place. In its opening segment, the statute speaks of *employment* exposure—an event which obviously is linked to specific employment or employments. Yet, when the statute later speaks of *employment* cessation, Winstead contends that the legislature meant the employee's *occupation,* not the specific employment. We reject an interpretation which ascribes different meanings to the same word as it variously appears in a statute unless the context clearly requires such an approach. This is all the more true where, as here, the word reappears *in the same sentence* of the statute at issue. Such an interpretation borders on the unreasonable. We must avoid such interpretations. *See Riley v. Doe,* 152 Wis. 2d 766, 770, 449 N.W.2d 83, 84 (Ct. App. 1989).

Section 102.565(1), Stats., was amended to its present form by sec. 28, ch. 278, Laws of 1979, effective May 13, 1980. Winstead argues that an analysis of the statute prior to this amendment demonstrates legislative intent to compensate employees in a plant closure situation. However, the "predecessor" statute Winstead quotes without citation we discovered in sec. 102.565(1), Stats. (1935). This statute was repealed and recreated by ch. 180, Laws of 1937. Since then, the statute has undergone numerous changes. We do not see a fifty-three-year-old legislative repeal as meaningfully bearing upon the interpretation of a statute which did not assume its present form until 1980.

██

Winstead argues that our construction of sec. 102.565(1), Stats., renders the law meaningless in a plant closure case where the employee is unaware of his employment-related medical condition at the time of the shutdown. This same concern was recited by the ALJ in his ruling. We fully agree with Winstead that this is the effect of our interpretation of the statute, for we conclude that this is precisely what the legislature intended.

Whether the statute should be further expanded to cover Winstead's situation is a matter of public policy for the legislature. It is not one for us to "judicially legislate." We recognize and respect the body of law which holds that the worker's compensation act should be liberally construed to effect as fully as possible its beneficent objective. *See West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 422, 342 N.W.2d 415, 422 (1984). This principle assumes that the act applies in the first instance. It does not here.

*By the Court.*—Judgment affirmed.