Isabelle A. WILSON, Plaintiff-Appellant,†

v.

WAUKESHA COUNTY, Defendant-Respondent,
FAMILY HEALTH PLAN, Defendant.

Court of Appeals

*No. 90-0361. Submitted on briefs July 25, 1990.—Decided
August 29, 1990.*

(Also reported in 460 N.W.2d 830.)

† Petition to review pending. This petition was not disposed
of at the time the volume went to press. Its disposition will
be reported in a later volume.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Christopher Lowe* of *Lowe Law Offices* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Steve Schmitz*, assistant corporation counsel, Waukesha county.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   Isabelle A. Wilson appeals from a circuit court summary judgment dismissing her personal injury claim against Waukesha county. Wilson raises two issues on appeal: (1) whether Waukesha county "maliciously" failed to warn her of an unsafe condition on county land and therefore cannot claim

immunity from liability under Wisconsin's recreational use immunity statute, sec. 895.52, Stats.; and (2) whether Waukesha county deprived her of constitutional rights in violation of 42 U.S.C. sec. 1983. Based on the summary judgment record in this case, we conclude that Waukesha county did not act maliciously, as we define that term in sec. 895.52(4)(b). We also conclude that Wilson's section 1983 claim does not flow from a governmental policy or custom—an essential allegation to a viable section 1983 action. Accordingly, we affirm the judgment of the trial court.

The essential facts are not in dispute. Waukesha county owns and operates Menomonee Park. Wilson was injured in Menomonee Park on March 8, 1987, when she tripped over a metal cable used to cordon off a hiking trail which is closed to the public during winter months. Park personnel had been using the cable—which was strung approximately nine inches above the ground between two posts positioned on either side of the entrance to the trail—since 1978. Over the years, park personnel used simple devices to alert park patrons to the presence of the low-slung cable. Workers tied rags to the cable to serve as warning "flags." Similarly, workers attached a small metal sign to the cable. The rags and the metal sign were far from permanent fixtures: vandals frequently removed the signs, and weather destroyed the rags. Park workers inspected and replaced these warning devices only sporadically during the winter months. No such warning devices were tied to the cable at the time of Wilson's accident.

Section 895.52, Stats., immunizes landowners from liability arising from injuries sustained by recreational users of their land. There are exceptions, however, to the statute's broad immunity for landowners who "maliciously" fail to warn recreational users of unsafe condi-

tions on the premises. *See generally* sec. 895.52(3) through (6). Wilson claims that actions of Waukesha county park personnel in connection with the metal cable in Menomonee Park come within such an exception.

Section 895.52(4)(b), Stats., negates immunity for governmental bodies other than the state of Wisconsin from liability for:

> injury caused by a malicious act or by a malicious failure to warn against an unsafe condition of which an officer, employe or agent of a governmental body knew, which occurs on property designated by the governmental body for recreational activities.

*Id.* Wilson argues that county park employees acted maliciously within the meaning of this statute and thus the immunity exception should apply. She argues two reasons in support: (1) by installing the metal cable and affixing the cautionary rags and sign to it, the county knew a dangerous condition existed in the park; and (2) in failing to establish frequent and regular replacement procedures for the warning devices during the winter months, the county displayed blameworthy indifference to a hazard it knew existed.

We review summary judgment determinations *de novo,* independent of the trial court's decision. *Acharya v. Carroll,* 152 Wis. 2d 330, 338, 448 N.W.2d 275, 279 (Ct. App. 1989). Furthermore, construction of a statute and its application to a set of facts present a question of law—matters also reviewed by us without deference to the trial court's decision. *L & W Constr. Co., Inc. v. Wisconsin DOR,* 149 Wis. 2d 684, 688-89, 439 N.W.2d 619, 620 (Ct. App. 1989).

Wilson's argument presents a question of statutory construction. The primary source of statutory construction is the statute itself. *White v. General Casualty Co.*, 118 Wis. 2d 433, 437, 348 N.W.2d 614, 617 (Ct. App. 1984). Neither the statute nor attendant case law, however, defines "malicious" within the meaning of sec. 895.52, Stats. Ordinarily, in the absence of statutory definition, the court can establish the meaning of a term by reference to its common usage as reported in a recognized dictionary. *Village of Menomonee Falls v. Falls Rental World,* 135 Wis. 2d 393, 397, 400 N.W.2d 478, 480 (Ct. App. 1986). But where the term is ambiguous, the court will refer to the scope, history, context, subject matter and object of the statute to discern legislative intent. *Schinner v. Schinner,* 143 Wis. 2d 81, 89, 420 N.W.2d 381, 384 (Ct. App. 1988). A statutory phrase or word is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses. *Wisconsin Bankers Ass'n (Inc.) v. Mutual Sav. & Loan Ass'n,* 96 Wis. 2d 438, 450, 291 N.W.2d 869, 875 (1980).

We need look no further than Wilson's and Waukesha county's competing interpretations of the word "malicious" to find the two "senses" necessary for a word to meet the test for ambiguity. Wilson argues that "malicious" should be defined expansively to include not only the more egregious concept of ill will, but willful, wanton, and reckless disregard as well. Waukesha county maintains that malice in this context means only ill will and cites to portions of both Black's Law Dictionary and Wis JI—Civil 1707 in support. However, both of the county's sources also contain additional language that support Wilson's position.

Neither party, however, looks to the source with the most precedential muscle. The legislative drafting file for sec. 895.52, Stats., makes clear that in this context, "malicious" does not include mere willful behavior. "Wilful," observed one reviewer of a preliminary draft of sec. 895.52(6), "is not the test. Malicious is. Wilful is an almost meaningless term that means not much more than negligent." Legislative Reference Bureau Drafting File for 1983 S.B. 586, letter from Attorney John R. Zillmer to Sen. David Helbach (October 11, 1983) (concerning draft of bill in progress). Another reviewer observed of the same subsection that the statute should specifically exclude all reference to willfulness because " 'wilful' . . . in effect guts the entire statute." Legislative Reference Bureau Drafting File for 1983 S.B. 586, letter from Theodore L. Priebe, A.A.G. to Jim Christianson, D.N.R. Bureau of Legal Services (October 17, 1983) (concerning draft of bill in progress).

While these observations were not primarily directed specifically at the subsection at issue in this case, the difference among subs. (3) through (6) is the type of landowner involved, not the standard by which exception from immunity is made. We will reject an interpretation which ascribes different meanings to the same word as it variously appears in a statute unless the context clearly requires such an approach. *General Castings Corp. v. Winstead,* 156 Wis. 2d 752, 759, 457 N.W.2d 557, 561 (Ct. App. 1990).

Here we find ample support in both the structure of sec. 895.52, Stats., and the legislative history of the statute that the legislature intended the word "malicious" to have uniform meaning throughout the statute, and that that meaning should not include conduct that is merely willful. The legislature intended that sec. 895.52 be liber-

ally construed in favor of property owners to protect them from liability. Sec. 1, 1983 Wis. Act 418. Because an expansive definition of "malicious" would effectively undercut the broad immunity obviously intended by the legislature, we adopt as the definition of "malicious" in sec. 895.52 that portion of Wis JI—Civil 1707, Punitive Damages: Nonproducts Liability, which defines malicious acts as those that "are the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended." We do *not* adopt that portion of the instruction which pertains to acts which are wanton, willful, and in reckless disregard of a claimant's rights.

Wilson argues that dicta in *Wirth v. Ehly,* 93 Wis. 2d 433, 287 N.W.2d 140 (1979), suggests the standard ought to be willful *or* malicious. *Id.* at 446–47, 287 N.W.2d at 147. This argument too must fail not only in light of the reasons previously stated, but also because *Wirth* was decided under the predecessor to the current recreational use immunity statute. Section 895.52, Stats., is "intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 [the predecessor statute] . . . if the decision is . . . inconsistent with the provisions of this act." Sec. 1, 1983 Wis. Act 418. Because the provisions of the current recreational use immunity statute are inconsistent with an expansive reading of the word "malicious," *Wirth* can have no influence on this decision.

Under the test we have fashioned here, we conclude that the essential and undisputed facts established that Waukesha county's actions were not malicious within the meaning of sec. 895.52(4)(b), Stats.[1] The county

---

[1]Because we assess whether Waukesha county's actions were malicious under the ill will standard, we do not need to decide

erected a barrier to keep park patrons off hiking trails until the advent of safe hiking weather. This hardly evinces ill will or an active desire to injure Wilson or others like her. If the cable was not the safest method by which to keep park patrons off the trail, and if Menomonee Park employees were not as diligent in checking and replacing warning devices affixed to the cable as they could have been, then, as the trial court observed, the county had at most been negligent. The trial court properly directed summary judgment against Wilson and we affirm.

We turn now to Wilson's section 1983 claim. The trial court directed summary judgment against Wilson, reasoning that she had not established reckless or malicious behavior on the part of the county. We do not address the issues of whether recklessness is properly an element of a section 1983 claim and whether the county acted with recklessness within the meaning of section 1983. Rather, because we review this case *de novo*, we affirm on grounds raised by Waukesha county in the trial court, but not considered by that court. Waukesha county contends Wilson's complaint is fatally defective because she failed to plead that her injuries resulted from a governmental custom of inattention to the Menomonee Park cable barrier. We agree.

The methodology for review of summary judgment is well known. *See generally In re Cherokee Park Plat,* 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983). The appellate court does not reach the second step in summary judgment methodology if the complaint fails to state a claim. *See id.* at 116, 334 N.W.2d at 583.

whether the county's actions were malicious under Wilson's more expansive interpretation.

Custom or policy is a variant of section 1983's "color of law" requirement and is an essential element of a section 1983 claim against a municipality or governmental body. *See generally Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 691 (1978). Bare legal conclusions attached to narrated facts do not suffice to meet the requirements of notice pleading. *Sutliff, Inc. v. Donovan Co.*, 727 F.2d 648, 654 (7th Cir. 1984). Wilson points out that park personnel did not regularly inspect warning devices on the cable during the winter months, but fails to tie these facts to any affirmative claim that the county had either adopted such a policy of inattentiveness or permitted the practice to endure such that it was "permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at. 691. Accordingly, we conclude that Wilson has not stated a claim for deprivation of her constitutional rights under section 1983.

*By the Court.*—Judgment affirmed.

BROWN, J. (*concurring*). I concur in the decision, but based upon different reasoning. The majority concludes that the term "malicious" is ambiguous as it appears in the statute. It then uses legislative history to resolve the ambiguity.

I am persuaded that the term "malicious" is unambiguous. As defined in Wis JI—Civil 1707, Punitive Damages: Nonproducts Liability, "malicious" means acts which are "the result of hatred, ill will, a desire for revenge, or inflicted under circumstances where insult or injury is intended." The term is not synonymous with "wanton, willful or reckless disregard." Those words are defined in the instruction as "indifference . . . to the

consequences of his actions, even though he may not intend insult or injury."

The terms "willful," "wanton" and "reckless disregard" have been used interchangeably in the law because they all mean virtually the same thing. The term "malicious" is set apart. This is borne out by the punitive damage instruction stating that outrageous behavior is conduct which is either malicious *or* wanton, willful or reckless disregard. The fact that the term malicious is set off in the disjunctive from the other three words says it all.

Thus, when the legislature used the term "malicious" in the statute rather than "willful" or either of its analogues, it meant to signify that "hatred" or "ill will" is a necessary component before an exception to immunity can arise. In my view, the use of the word "malicious" is unambiguous and we need not resort to legislative history.

In passing, I observe that had the legislature used the term "outrageous," then we would have been presented with an ambiguity since outrageous is defined as either a malicious act or a willful, wanton òr reckless one. We do not have that problem.

I concur in the decision, but based upon different reasoning.