R. ROTH JUDD, Executive Director Ethics Board
You have asked for my opinion on several provisions of Wisconsin's lobbying law, chapter 13, subchapter III of the Wisconsin statutes. You first ask whether section 13.625, Stats., which prohibits lobbyists and persons or organizations who employ lobbyists (principals) from "furnishing" items of pecuniary value to agency officials, legislative employes, elective state officials and candidates for elective state office (state officials), means that a lobbyist or a principal cannot sell items, services, securities and the like to a state official.
Words in a statute must be construed according to common and approved usage. Sec. 990.01 (1), Stats. That can be determined by consulting a recognized dictionary. Ervin v. City of Kenosha,159 Wis.2d 464, 464 N.W.2d 654 (1991). Webster's Third New International Dictionary 923 (1986) gives the first definition of furnish as "to provide or supply with what *Page 206 
is needed, useful, or desirable." Wisconsin cases involving the word "furnish" follow that ordinary usage. In State ex rel.Milwaukee G.L. Co. v. Arnold, 190 Wis. 602, 604,209 N.W. 601 (1926), the court held that the phrase "furnishing gas for lighting or fuel or both" included "the means by which the gas is supplied to the customer for use." In Adams v. Feiges,206 Wis. 183, 186, 239 N.W. 446 (1931), the court held that a contractor who agreed to furnish architectural services had simply agreed "to supply or provide" those services. Finally, inState v. Graves, 257 Wis. 31, 34, 42 N.W.2d 153 (1950), the court held that a bartender who had sold and delivered beer to an adult with the knowledge that the adult was going to give the beer to a minor had "furnished" the beverage to the minor. It certainly is no defense to a charge of furnishing alcohol to a minor that the alcohol was sold, not given.
In 77 Op. Atty. Gen. 160 (1988), this office opined that a state officer or employe could not accept compensation from a principal in exchange for services as a member of the board of directors of the principal. In 1989 Wisconsin Act 338, the Legislature amended the lobbying law to limit its application to elected state officials, legislative employes, candidates for state office and agency decision-makers. The fact that the Legislature amended the statute in response to the attorney general opinion, but did not change the general prohibition against a lobbyist or principal furnishing something of pecuniary value and a state official from accepting something of pecuniary value, is persuasive evidence that the Legislature wanted to prohibit the furnishing of a thing of pecuniary value even if something of pecuniary value was furnished in return.
If the Legislature thought that section 13.625 allowed fair-value compensation for services rendered, it would not have been necessary to amend section 66.884 (6) which provides that each commissioner of the Milwaukee Metropolitan Sewerage District, "including any commissioner who serves as a member of thelegislature, shall receive actual and necessary expenses *Page 207 
incurred while in the performance of the duties of the office and, in addition, shall receive a salary in an amount the commission specifies by resolution." The italicized portion of that statute was added by 1987 Wisconsin Act 417, section 1, effective June 17, 1988. The amendment was necessary because the sewerage district was a registered principal. 78 Op. Att'y Gen. 149 (1989).
As you note in your request, if the statute were interpreted as permitting the acceptance of items in exchange for fair value, the Ethics Board would need to determine the fair market value of goods or services exchanged. If a principal hired a legislator as a consultant or offered a legislator an opportunity to buy stock in a closely-held corporation, the board would have to determine the value of the services and the value of the stock in order to attempt to determine whether there had been a fair exchange. The potential for abuse inherent in that interpretation is obviated by giving the statute its common and ordinary interpretation. I conclude, therefore, that the prohibition on furnishing things of pecuniary value also prohibits the sale of such things to or purchase of such things from state officials. Section 13.625 (2) provides a limited exception to this rule for things of value furnished by or to principals which are normally available to the general public on the same terms and conditions.
Under section 13.625 (2) a principal may furnish something of pecuniary value to a state official if the item or service is normally available to the general public on the same terms and conditions. Section 13.625 (1) prohibits lobbyists from furnishing and officials from accepting anything of pecuniary value. There is no exception in that subsection for things of pecuniary value which are also made available to the general public. The law is unambiguous; lobbyists may not furnish to an official, and an official may not accept from a lobbyist, an item or service of pecuniary value even if that item or service is available to the general public. Therefore, an official may purchase banking *Page 208 
services and may receive loans from a bank which hires a lobbyist if the services and loans are provided to the official on the same terms and conditions that the services and loans are provided to the general public. Similarly, an official could purchase legal services from or sell legal services to an association, corporation or partnership that employs a lobbyist if such services are provided on the same terms or conditions to the general public. Sec. 13.62 (12), Stats. A lobbyist cannot, however, provide legal services to an official or purchase legal services from an official even if the services are available to the general public on the same terms and conditions.
The question of whether a lobbyist who is furnishing something of pecuniary value to an official's employer, relative or corporation is actually furnishing the item or service to the state official will always be a question of fact. I agree with your conclusion that the law not only prohibits a lobbyist from furnishing things of pecuniary value directly to an official, but also prohibits a lobbyist from furnishing those things indirectly if the official will receive something of pecuniary value from the transaction. Therefore, an official would not be in violation of the law if the official's employer did business with a lobbyist but the official's compensation from the company was totally unrelated to and not determined by the income derived from that business. On the other hand, if a lobbyist were purchasing products from a company which employed an official, knowing that the official's compensation from the company would be enhanced by the purchases, a violation of the law would occur.
Your third question arises because of the difference in coverage between the lobbying law and the ethics law. Section13.625 (7) provides that the prohibited practices section of the lobbying law "does not apply to the furnishing or receipt of a reimbursement or payment for actual and reasonable expenses authorized under s. 19.56 for the activities listed in that section." Section 19.56 is part of the ethics law and applies to state public officials as defined in that law. Sec. 19.42 (13) and *Page 209 
(14), Stats. The lobbying law, on the other hand, applies to elected state officials, legislative employes, agency officials and candidates for elective state office. The lobbying law will apply to some state employes who are not state public officials under the ethics law.
The question arises, therefore, whether the exception in section 13.625 (7) for expenses authorized under section 19.56
applies only to those individuals who are included within the ethics code in the first place, and therefore could have "expenses authorized under s. 19.56" or whether the exception is meant to apply to the kinds of expenses which would be authorized under section 19.56. I agree with your conclusion that there is no public policy which would explain a legislative intention to treat state public officials who are covered by both the lobbying law and the ethics law differently from officials who are covered only by the lobbying law. Indeed, if the law were interpreted as providing an exception only for officials covered by the ethics code, we would have an anomalous situation in which officials covered by the ethics law could accept actual and reasonable expenses from principals and lobbyists but individuals not covered by the ethics law could not. There is no reason to interpret the statute to provide such an anomalous result.
You next ask whether section 13.625 (7) which provides an exception for expenses authorized under section 19.56 includes all of the activities listed in section 19.56. The question arises because section 19.56 authorizes the receipt of payments in six paragraphs of subsection (3):
(3) Notwithstanding s. 19.45:
 (a) A state public official may receive and retain reimbursement or payment of actual and reasonable expenses and an elected official may retain reasonable compensation, for a published work or for the presentation of a talk or participation in a meeting related to a topic specified in sub. (1) if the payment or reimbursement is *Page 210 
paid or arranged by the organizer of the event or the publisher of the work.
 (b) A state public official may receive and retain anything of value if the activity or occasion for which it is given is unrelated to the official's use of the state's time, facilities, services or supplies not generally available to all citizens of this state and the official can show by clear and convincing evidence that the payment or reimbursement was unrelated to and did not arise from the recipient's holding or having held a public office and was paid for a purpose unrelated to the purposes specified in sub. (1).
 (c) A state public official may receive and retain from the state or on behalf of the state transportation, lodging, meals, food or beverage, or reimbursement therefor or payment or reimbursement of actual and reasonable costs that the official can show by clear and convincing evidence were incurred or received on behalf of the state of Wisconsin and primarily for the benefit of the state and not primarily for the private benefit of the official or any other person.
 (d) A state public official may receive and retain from a political committee under ch. 11 transportation, lodging, meals, food or beverage, or reimbursement therefor or payment or reimbursement of costs permitted and reported in accordance with ch. 11.
As you suggest, the exception in section 13.625 (7) clearly applies to expenses allowed under section 19.56 (3)(a). I also agree that the exception does not apply to the payment of other expenses under section 19.56 (3). The statute is ambiguous because section 13.625 (7) provides an exception for "expenses" authorized under section 19.56 but only one subsection, section19.56 (3)(a) involves what would usually be considered expenses. The reference to section 19.56, without any subsection reference, therefore, creates an ambiguity. Because the law is ambiguous, we must determine the Legislature's *Page 211 
intent from the statute's legislative history. State ex rel. Newspapersv. Showers, 135 Wis.2d 77, 398 N.W.2d 154 (1987).
1989 Assembly Bill 611, section 17, which became 1989 Wisconsin Act 338, section 17, as passed by the Legislature, amended section 13.625 (7) to read:
 This section does not apply to the furnishing or receipt of [a]** reimbursement [or payment]** for actual and reasonable expenses [for a published work or for the presentation of a talk or program, the topic of which concerns legislative, administrative, executive or judicial processes or proposals initiated by or affecting state government as]** authorized under s. 19.56 [for the activities listed in that section.]*
Quite clearly, the Legislature's intention was to make the exception under section 13.625 (7) parallel the exception in section 19.56 (3)(a).
The Governor exercised a partial veto of 1989 Assembly Bill 611, section 17, by deleting the words "for a published work or for the presentation of a talk or program, the topic of which concerns legislative, administrative, executive or judicial processes or proposals initiated by or affecting state government as" and deleting the Legislature's striking of the words "for the activities listed in that section." The Governor explained his actions in his veto message:
 Sections 17 and 70 of the bill, as they affect ss. 13.625 (7) and 19.56 of the Statutes, substitute "program" for "meeting." I have vetoed this minor modification because I am uncertain what the term "program" may mean and I prefer the certainty of current law over the uncertainty of further ambiguity in this area of law.
The Legislature intended to refer only to the payment of actual and reasonable expenses authorized under section19.56 (3)(a). The Governor never expressed any intention of *Page 212 
broadening the exception. Indeed, the Governor's concern was that the insertion of new terms might create ambiguity.
Interpreting the reference to section 19.56 as encompassing only section 19.56 (3)(a) is consistent with the legislative history of the statute and consistent with the spirit or intention of the statute. City of Madison v. Town of Fitchburg,112 Wis.2d 224, 332 N.W.2d 782 (1983). This interpretation is also consistent with the words of the statute. Section 13.625 (7) creates an exception for the "reimbursement or payment for actualand reasonable expenses authorized under s. 19.56 for the activities listed in that section." The phrase "reimbursement or payment for actual and reasonable expenses" is used only in section 19.56 (3)(a); it does not appear elsewhere in section19.56.
Your last question concerns the meaning of "available to the general public" as used in section 13.625 (2). As your request notes, no Wisconsin statutes or court cases have interpreted the phrase "general public." The legislative history of the statute is not helpful. Cases from other jurisdictions involve interpretations of specific statutes and are not generally helpful.
I agree with your conclusion that the phrase need not be interpreted as including everyone in the world or even all residents of Wisconsin. On the other hand, something is not made available to the general public simply because the prerequisites to receiving it do not turn on state employment. Something is available to the general public only if it is accessible to the general public. See American Mut. Liability Ins. Co. v. Fisher,58 Wis.2d 299, 303, 206 N.W.2d 152 (1973). Whether something is available to the general public will always be a question of fact.
I agree that the criteria you suggest are appropriate for determining whether an item or service is available to the general public under section 13.625 (2). Under those criteria, something is available to the general public if:
 1. It is available to anyone who wants it and who meets the criteria for eligibility; *Page 213 
 2. The criteria are: (a) established and readily identifiable; and (b) drawn without the purpose or effect of giving a preference to or conferring an advantage upon an agency official, legislative employe or elective state official; and
 3. There is no offer or notice of availability directed to an agency official, legislative employe or elective state official with the effect of conferring an advantage not also given others who meet the criteria.
Under these criteria, a legislator who is an alumnus of a university which is also a principal could purchase school memorabilia from the school but the school could not hire the official as a "consultant."
JED:AL
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
** [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS UNDERLINED IN THE ORIGINAL TEXT.] *Page 214