James L. MILTON, Tania Milton and
Jesse J. Hoffman, Plaintiffs-Appellants,†

v.

WASHBURN COUNTY and Minong-Wascott Area
Trails Club, Inc., Defendants-Respondents,

ABC INSURANCE COMPANY, General Casualty
Company of Wisconsin, Health Partners and Blue
Cross Blue Shield of Minnesota, Defendants.

Court of Appeals

*No. 2010AP316. Submitted on Briefs February 15, 2011.
—Decided March 1, 2011.*

2011 WI App 48

(Also reported in 797 N.W.2d 924.)

† Petition For Review denied 5/24/11.

320

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Dean R. Rohde* and *Martha H. Heidt* of *Bye, Goff & Rohde*, River Falls.

On behalf of the defendant-respondent, Washburn County, the cause was submitted on the brief of *Thomas J. Misfeldt* and *Ryan J. Steffes* of *Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire.

On behalf of the defendant-respondent, *Minong-Wascott Area Trails Club, Inc.*, the cause was submitted on the brief of *Joe Thrasher of Thrasher, Pelish & Franti, Ltd.*, Rice Lake.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.    James L. Milton, Tania Milton, and Jesse J. Hoffman appeal a summary judgment dismissing their negligence claims against the Minong-Wascott Area Trails Club and Washburn County. The circuit court concluded both the Club and the County are immune from liability under Wisconsin's recreational immunity statute, WIS. STAT. § 895.52.[1] We agree and affirm.

## BACKGROUND

¶ 2.    This case arises from a snowmobile accident that occurred on December 10, 2007 in Washburn County. On that date, James Milton and Jesse Hoffman were traveling by snowmobile from Milton's home to the Outback Bar. The bar is located on State Highway 77, approximately three quarters of a mile south of Washburn County snowmobile Trail Eight. To get to the bar from Trail Eight, a snowmobile operator must turn off the trail onto a former logging road commonly known as the Elm Creek Ford access trail. A directional sign on Trail Eight advises that the access trail leads to the bar.

¶ 3.    The access trail is gated approximately one-quarter of a mile north of Highway 77. The purpose of the gate is to prevent vehicles heavier than 900 pounds from traveling on the northern portion of the access

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

322

trail, where the soil is too soft to support heavy traffic. Both the County's road access plan and a local ordinance require that the gate be closed at all times to block heavy vehicles. However, a path along the side of the gate allows lighter vehicles, such as snowmobiles, to pass.

¶ 4. Both the access trail and Trail Eight are located on county land. Trail Eight is part of the County's official snowmobile trail system and is maintained by the Club, pursuant to a contract with the County. The access trail is not an official county snowmobile trail, nor is it an unofficial "club trail."[2] Accordingly, the County does not allow the Club to groom the access trail as a snowmobile trail. However, the County gave the Club a key to the access trail gate, so that the Club can use the access trail to transport its grooming equipment to Trail Eight. County forest administrator Michael Peterson testified that the access trail "provide[s] an easy access into what's a long, linear, inaccessible trail. If [the Club] wanted to go in and do mowing or grooming, it would be an easy point to unload machinery and get to [Trail Eight] versus traveling a number of miles from another access point."

¶ 5. December 10, the date of the accident, was the first day in 2007 that the County's snowmobile trails were open. That afternoon, county recreational coordinator Robert Busch traveled throughout the county opening gates on the official trail system. Busch was accompanied by Dan Carlson, his contact person with the Club. As Busch and Carlson were driving down Highway 77, Busch noticed car tracks leading onto the access trail and decided to investigate. He drove down

---

[2] A "club trail" is a snowmobile trail that is maintained by a local snowmobile club, with the County's permission, but is not sanctioned by the County as an official trail.

the access trail and discovered that the gate was open. In accordance with the County's road access plan and ordinance, Busch closed and locked the gate.

¶ 6. Several hours later, Milton and Hoffman turned onto the access trail from Trail Eight, on their way to the Outback Bar. They collided with the closed gate and were injured. They subsequently sued the Club and the County. They alleged the Club was negligent by: (1) failing to ensure the access trail gate was kept open; (2) grooming the access trail, which made it appear to be an official county trail; and (3) either putting up or failing to remove the directional sign for the Outback Bar. They alleged the County was negligent by closing the gate. The Club and the County moved for summary judgment, arguing recreational immunity barred Milton and Hoffman's claims.[3] The circuit court granted summary judgment, and Milton and Hoffman now appeal.

## DISCUSSION

■■■■

¶ 7. We independently review a grant of summary judgment using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a

---

[3] The County also asserted governmental immunity. The circuit court did not address governmental immunity because it concluded recreational immunity barred the claims. We agree recreational immunity is dispositive and therefore do not address governmental immunity. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

matter of law. Wɪs. Sᴛᴀᴛ. § 802.08(2). Recreational immunity under Wɪs. Sᴛᴀᴛ. § 895.52 is a defense that may entitle a moving party to summary judgment. *Leu v. Price Cnty. Snowmobile Trails Ass'n, Inc.*, 2005 WI App 81, ¶ 6, 280 Wis. 2d 765, 695 N.W.2d 889. Whether the statute applies in a particular case is a question of law that we review independently. *Id.*

## I. The Club

¶ 8.  Milton and Hoffman contend the Club is not entitled to recreational immunity because the Club is not an "owner" of the access trail. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 895.52(2)(b) provides that "no owner . . . is liable for . . . any injury to . . . a person engaging in a recreational activity on the owner's property[.]"[4] The statute defines an owner as either a "person, including a governmental body or nonprofit organization, that owns, leases or occupies property" or a "governmental body or nonprofit organization that has a recreational agreement with another owner." Wɪs. Sᴛᴀᴛ. § 895.52(1)(d)1.-2. It is undisputed that the Club does not own or lease the access trail, and that its recreational agreement with the County does not include the access trail.[5] The operative question is therefore whether the Club "occupies" the access trail.

---

[4] Snowmobiling is a recreational activity. *See* Wɪs. Sᴛᴀᴛ. § 895.52(1)(g).

[5] The circuit court concluded the Club is an occupant of the access trail because "[t]here was a contract between Washburn County and [the Club] whereby [the Club] provided maintenance services, grooming, those sort of things." It is undisputed that the Club's contract with the County does not apply to the access trail. Thus, the circuit court erred when it decided the Club occupies the access trail because of the contract. However, if a circuit court reaches the right result for the wrong reason,

325

¶ 9. We have previously stated that, for purposes of the recreational immunity statute, an occupant includes:

persons who, while not owners or tenants, *have the actual use of land* . . . . While "occupant" includes [an] owner and lessee, it also means one who has the *actual use of property without legal title, dominion or tenancy.* In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.

*Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 491, 431 N.W.2d 696 (Ct. App. 1988) (emphasis added) (quoting *Smith v. Sno Eagles Snowmobile Club, Inc.*, 823 F.2d 1193, 1197 (7th Cir. 1987)).

¶ 10. The Club qualifies as an occupant because it has actual use of the access trail. The County gave the Club permission to use the access trail to reach Trail Eight, one of the trails the Club is contractually obligated to maintain. The County gave the Club a key to the gate, to allow the Club to transport its grooming equipment over the access trail. The Club actually uses the access trail to get to Trail Eight. This actual use, combined with the County's permission, is sufficient to make the Club an occupant of the access trail for recreational immunity purposes. The Club is therefore entitled to recreational immunity, unless one of the statutory exceptions applies.

¶ 11. Milton and Hoffman argue an exception does apply, namely Wis. Stat. § 895.52(5), which provides an exception if the plaintiff's injury is caused by a malicious act or a malicious failure to warn of an unsafe

we will nevertheless affirm. *See State v. King*, 120 Wis. 2d 285, 292, 354 N.W.2d 742 (Ct. App. 1984).

condition.[6] An act or failure to warn is malicious if it results from hatred, ill will, or a desire for revenge or is inflicted under circumstances where insult or injury is intended. *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 483, 464 N.W.2d 654 (1991). Milton and Hoffman do not argue that the Club acted with any subjective hatred, ill will, or desire for revenge. However, they assert there is a disputed question of fact as to whether the Club intended to injure them. They note that an actor intends to injure if it is aware that its conduct is substantially certain to cause injury, even if it does not desire that result. *See Strenke v. Hogner*, 2005 WI 25, ¶¶ 35–36, 279 Wis. 2d 52, 694 N.W.2d 296.

█

¶ 12.  Milton and Hoffman argue the Club's conduct was so certain to cause injury that a jury could infer they were aware injury was practically certain to result. We disagree. Our supreme court has frequently cited an example from Prosser's LAW OF TORTS to illustrate the type of situation where a jury may infer an actor's awareness that its conduct is substantially certain to cause harm:

> [Intent] must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does . . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it.

*Pachucki v. Republic Ins. Co.*, 89 Wis. 2d 703, 711, 278 N.W.2d 898 (1979) (quoting WILLIAM PROSSER, LAW OF

---

[6] The malicious act exception in WIS. STAT. § 895.52(5) applies to property owners that are nonprofit organizations. A similar malicious act exception in § 895.52(4)(b) applies to property owners that are governmental bodies.

TORTS 31–32 (4th ed. 1971)); *see also Loveridge v. Chartier*, 161 Wis. 2d 150, 168, 468 N.W.2d 146 (1991); *Raby v. Moe*, 153 Wis. 2d 101, 111, 450 N.W.2d 452 (1990). According to Milton and Hoffman, the Club acted maliciously by grooming the access trail, failing to keep the gate open, and either putting up or failing to remove the Outback Bar directional sign. Milton and Hoffman also allege the Club maliciously failed to warn of the dangerous condition its conduct created. Unlike firing a bullet into a dense crowd, these actions are not so certain to cause injury that a reasonable jury could infer the Club was aware of a substantially certain risk of harm. Therefore, a jury could not conclude the Club intended to harm Milton and Hoffman.

¶ 13. A comparison of this case with *Ervin*, another case involving the malicious act exception, is instructive. There, the city of Kenosha hired lifeguards to work at a city-owned beach without conducting formal interviews or skills testing. *Ervin*, 159 Wis. 2d at 471. The lifeguards had no formal training in lifeguarding or first aid. *Id.* Two young boys were playing in chest-high water when they encountered a steep, unmarked drop-off ten to fifteen feet from shore. *Id.* at 469–70. The boys were unable to swim and struggled to stay afloat in the deep water. *Id.* at 470. Despite observing the boys in distress, the unqualified and untrained lifeguards did nothing for several minutes. *Id.* at 470–71. Only after bystanders went into the water to help the boys did the lifeguards join the rescue attempt. *Id.* Both boys drowned.

¶ 14. The boys' parents sued the city and argued there was a genuine issue of material fact as to whether the malicious act exception to recreational immunity applied. *Id.* at 479. Our supreme court rejected their argument and upheld a summary judgment in favor of the city:

We conclude that the conduct of the City in negligently hiring and failing to train the lifeguards, the conduct of the lifeguards in negligently giving rescue attempts, and the conduct of both the City and the lifeguards in maintaining and failing to warn of the unsafe drop-off did not rise to the level of "malicious" in this case. Although this conduct may have been negligent or in reckless disregard of the youths' safety, there is no evidence that the deaths were the result of hatred, [ill will], a desire for revenge or inflicted under circumstances where insult or injury was intended. Under the facts presented in this case, the City must prevail as a matter of law on the issue of maliciousness because no reasonable view of the undisputed facts will support a finding of malicious conduct.

*Id.* at 484–85.

¶ 15. If the city's conduct in *Ervin* was not malicious, it is difficult to see how the Club's actions here could be deemed malicious. The Club's conduct was no more certain to cause injury than the city's conduct in *Ervin*. Thus, a reasonable jury could not infer the Club was aware its conduct was substantially certain to cause harm. As in *Ervin*, while the Club's conduct may have been "negligent[7] or in reckless disregard of [Milton and Hoffman's] safety, there is no evidence that [their injuries] were . . . inflicted under circumstances where insult or injury was intended." *See id.* at 485. Accordingly, the malicious act exception to recreational immunity does not apply.

## II. The County

¶ 16. Milton and Hoffman concede the County is an owner under Wis. Stat. § 895.52(1)(d)1. and is entitled to recreational immunity unless the malicious act

---

[7] An assertion the Club denies.

exception applies. However, they contend the exception applies because the County's decision to close the gate was "certain to cause an accident," creating a genuine issue of material fact as to whether the County was aware of the risk and therefore intended to injure them.

¶ 17.   We reject Milton and Hoffman's argument for two reasons. First, the County's road access plan and a local ordinance require that the gate be closed at all times. We do not see, and Milton and Hoffman do not explain, how the County can be deemed malicious for performing an act required by law.

¶ 18.   Second, as with the Club, we do not agree that the County's conduct was so certain to cause an accident that a reasonable jury could infer the County was aware an injury was substantially certain to result. Again, the closed gate was not "certain to cause an accident" in the same way that firing a bullet into a dense crowd is certain to cause injury. The gate was in place for about six years and was supposed to be closed at all times. Milton and Hoffman admit that the access trail was "used regularly by the public to access [the Outback Bar]." Yet, there is no evidence that the gate ever caused an accident other than the one at issue in this case. Based on the undisputed evidence, a reasonable jury could not conclude the County was aware its conduct was substantially certain to cause an injury. Consequently, the malicious act exception does not apply, and recreational immunity bars Milton and Hoffman's claims against the County.

*By the Court.*—Judgment affirmed.