# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 29, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP839**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV626

IN COURT OF APPEALS
DISTRICT II

ESTATE OF SWANNIE HER, BY NATHANIEL CADE, JR., SPECIAL ADMINISTRATOR, CHONG HER, EKIN HER, JASMINE HER, ALEXANDER HERNANDEZ, EVANGELIN HER, CHUEXNG HER, THVON HER, JOVANYEL RAMIREZ-CHANG, JHOVANNY RAMIREZ-CHANG, CHUEVE HER AND CONNIE HER,

    PLAINTIFFS-APPELLANTS,

  V.

CITY OF WEST BEND, KRAIG SADOWNIKOW, CRAIG HOEPPNER, RYAN ZAMROW, BROGAN ZOCHERT, MICHAELA MILLARD, CASSIDY HOLBROOK, NOAH WILKENS, MADELINE KAPHINGST AND ABIGAIL EHMKE,

    DEFENDANTS-RESPONDENTS,

LEAGUE OF WISCONSIN MUNICIPALITIES MUTUAL INSURANCE COMPANY,

    DEFENDANT.

APPEAL from a judgment of the circuit court for Washington County: SANDRA JO GIERNOTH, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. The Estate of Swannie Her appeals a summary judgment dismissing its negligence and wrongful death claims against the City of West Bend for the drowning death of Swannie.[1]  The Estate argues that the circuit court erred when it stayed discovery pending summary judgment and that genuine issues of material fact preclude summary judgment on the issue of whether the City is entitled to recreational immunity.[2]  We affirm.

## BACKGROUND

---

[1] The plaintiffs-appellants are Swannie Her's Estate, Swannie's parents, and Swannie's surviving siblings.  We will refer to them collectively as "the Estate."  The defendants-respondents are the City of West Bend; the City's mayor, park director, and insurance company; and the seven lifeguards who were on duty the day Swannie drowned.  We will refer to them collectively as "the City."

[2] The parties raise additional issues on appeal.  The Estate claims that genuine issues of material fact preclude summary judgment on the issue of whether the City is protected from liability under the doctrine of governmental immunity.  *See* WIS. STAT. § 893.80(4).  The City asserts that the case should be dismissed because the Estate did not comply with the notice requirements in WIS. STAT. § 893.80(1d) (2019-20).  We need not address these issues, however, because our decision that the City is entitled to recreational immunity renders these claims moot. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

The statutes material to this case have not been amended since 2016.  Accordingly, all references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

¶2      On June 11, 2016, six-year-old Swannie drowned in a pond at Regner Park.  It is undisputed that Regner Park is owned and operated by the City of West Bend.  According to deposition testimony, the pond is man made with a mucky bottom.  Visibility beneath the surface is less than six inches.  The pond is divided into three zones.  Zone one, the general swimming area, ranges in depth up to five feet.  Zone two, which features a diving raft, is in the center of the pond and reaches a depth of fifteen feet.  Zone three, the children's play area, is no more than three feet deep.  There is a general slope in the pond to the deep water, with a rope and buoys where the water gets deeper.

¶3      At the time of Swannie's drowning, seven lifeguards were on duty.  The lifeguards were certified by the Red Cross or YMCA, completed initial lifeguard training, and received additional weekly training.  The lifeguards also received the West Bend Aquatic Manual & Emergency Response Plan.  The staff rules and procedures required the lifeguards to visually scan their entire zone within seconds, ensure all swimmers wore wrist bands, swim test any patron who wished to go in the water over their armpits, and make sure children five years or younger were within arm's reach of a parent.

¶4      On June 11, 2016, Swannie was at the park with her mother and siblings to celebrate a relative's birthday.  The party took place at a picnic area near the pond.  Swannie arrived sometime after 5:00 p.m., put her swimming suit on, and obtained her mother's permission to go in the pond with her siblings.  Swannie's mother did not accompany Swannie.  Instead, Swannie's mother asked two of her older children to keep an eye on Swannie.  Swannie received a general admission wristband, but did not take the swim test required to swim in water above her armpits.

¶5 Swannie and her siblings began swimming in the shallow area of the pond. At some point, Swannie told her siblings she wanted to swim with another sibling, who was in a deeper area of the pond. No one in Swannie's family or any of the seven lifeguards on duty saw Swannie go under. Sometime after 5:50 p.m., a man found Swannie unresponsive at the bottom of the pond. He carried her out of the water and called for help. The lifeguards immediately called 911 and began resuscitation efforts. Emergency medical responders took Swannie to a nearby hospital. She never regained consciousness and died several days later.

¶6 The West Bend Police Department conducted a criminal investigation into Swannie's death. The park director also met with the lifeguards shortly after Swannie drowned to discuss what happened and review the emergency response plan. The police chief offered to help the park director conduct an internal investigation, but the park director determined that one was not necessary.

¶7 The Estate initially filed suit in federal court. It alleged that the City deprived Swannie of her right to life without due process in violation of the Fourteenth Amendment. The Estate also raised state law claims for negligence, wrongful death, and a violation of Wisconsin's Safe Place Statute, WIS. STAT. § 101.11.

¶8 The City moved for summary judgment in federal court. In addition to arguing for dismissal of the federal claim, the City argued that the state law claims were barred by recreational immunity. As material, the Estate responded that the malicious-act exception precluded recreational immunity. The federal district court dismissed the federal claim and relinquished jurisdiction over the state law claims. *See Estate of Her v. Sadownikow*, No. 17-CV-1015, 2018 WL

5622655 (E.D. Wis. Oct. 30, 2018). The Seventh Circuit Court of appeals affirmed. *See **Estate of Her v. Hoeppner***, 939 F.3d 872 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1121 (2020).

¶9     The Estate then filed suit in state court, reiterating its claims of negligence, wrongful death, and a violation of Wisconsin's Safe Place Statute. The City moved to stay all pretrial discovery pending the resolution of its forthcoming motion for summary judgment. It argued that a stay was warranted because, in the federal case, the parties fully briefed the state law claims, deposed all material witnesses, served multiple rounds of written discovery, and produced all relevant documents. The Estate responded that the state law claims were distinct from the federal claim, requiring "discovery unique to the state law claims to be conducted." It further suggested that, if the discovery items were duplicative, the City could seek protective orders on an item-by-item basis. *See* WIS. STAT. §§ 804.01(2)(am), 804.01(3). The circuit court granted the motion to stay in a written order, concluding that the Estate did not identify any new discovery necessary to the case.

¶10     At a scheduling hearing, the Estate made an oral motion "to revisit the denial of any discovery in this matter." The Estate told the court that it needed to depose "five or six" additional witnesses, including the park director, on the issue of recreational immunity because the issue of malicious intent was not fully litigated in the federal lawsuit. After noting that "oral arguments were neither permitted nor invited," the circuit court stated that it would nevertheless consider the motion. The court then orally denied the Estate's motion because it presented the same "generalized argument" the Estate made in its motion opposing the stay of discovery pending the summary judgment motion.

¶11    In its motion for summary judgment, the City argued that recreational immunity and governmental immunity barred the Estate's claims. The City also argued the case should be dismissed because the Estate did not comply with the notice requirements of WIS. STAT. § 893.80(1d). The Estate responded that genuine issues of material fact precluded summary judgment. The circuit court granted the City's motion, concluding that, under the facts of the case taken in the light most favorable to the Estate, both forms of immunity precluded liability. The court also determined that the Estate "substantially complied" with the notice requirements of § 893.80(1d).

## DISCUSSION

### I.    *Discovery*

¶12    The Estate claims that the circuit court erroneously stayed discovery pending the City's motion for summary judgment. Circuit courts have broad discretion in determining whether to limit discovery through a protective order. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 232, 594 N.W.2d 370 (1999); *see also Kinnick v. Schierl, Inc.*, 197 Wis. 2d 855, 865, 541 N.W.2d 803 (Ct. App. 1995) (circuit courts have broad discretion to determine if sufficient discovery has occurred before ruling on a motion for summary judgment). Where a movant shows good cause, WIS. STAT. § 804.01(3) permits the circuit court to make any order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See Paige K.B.*, 226 Wis. 2d at 232. We review the circuit court's decision for an erroneous exercise of discretion and will affirm as long as the circuit court examined the relevant facts, applied the proper legal standard, and reached a reasonable conclusion. *Id.* at 232-33.

¶13     In this case, the circuit court issued a written order explaining that it granted the City's motion to stay discovery for three main reasons. First, the circuit court found that the state law claims in this case were the same as the state law claims in the federal case. It determined there was no evidence the Estate changed its legal theory and thus "the extensive discovery that occurred in the federal case was premised on the same legal theories in this case."

¶14     Second, the circuit court found that the subject matter in the federal and state cases was "identical." It determined that, given the case's litigation history, it was reasonable to expect the Estate to "state specifically what discovery is necessary." It determined that the Estate failed to do so, making only a "general reference to unique discovery." The court noted that the Estate "has not identified one new witness to depose, one document needed to be produced, or one interrogatory that needs to be answered, over and above what has already occurred as a result of the federal litigation."

¶15     Finally, the circuit court determined that the Estate's suggestion that the City could seek protective orders on an item-by-item basis "would be time consuming for both the Court and the litigants, and a waste of judicial resources." The circuit court thus concluded that the City's motion was based on good cause under WIS. STAT. § 804.01(3) because "it avoids undue burden and expense to both the parties and the Court."

¶16     The Estate argues that the circuit court erroneously exercised its discretion because "very little if any discovery" was completed on the issue of recreational immunity and "other state claim specific defenses." The Estate argues that it provided the circuit court with information sufficient to warrant additional

7

discovery, pointing to its assertion at the scheduling conference that it needed to depose witnesses on the issue of recreational immunity. We are not persuaded.

¶17 The circuit court properly applied the law to the facts of this case in granting the City's motion to stay discovery. The Estate had every opportunity both in its briefs before the circuit court and in its oral motion to reconsider to explain what additional discovery was required. As the circuit court noted in its written order, aside from a general reference to "unique discovery," the Estate did not do so. The Estate's belated reference to recreational immunity at the scheduling hearing is not sufficient to cure this defect. As the circuit court concluded, the Estate did not present any new information at the scheduling hearing. Aside from the park director, the Estate did not tell the court which witnesses it sought to depose or provide the court with the specific information it sought. *See Kinnick*, 197 Wis. 2d at 864-65 (party claiming additional discovery is necessary to produce evidence to rebut a motion for summary judgment has burden to show by more than mere speculation that the discovery is relevant to a genuine issue of material fact).

¶18 The Estate also claims that the circuit court erred because it failed to weigh the value of any discovery against the burden on the parties, particularly in light of the purported discovery's relevance to summary judgment. Again, we disagree. As we have seen, in its written order, the court explicitly concluded that it had good cause to stay discovery because it "avoids undue burden and expense to both the parties and the Court." The circuit court explained it had "an interest in conserving judicial resources" and considered the impact a stay would have on the pending summary judgment motion. It concluded that, absent the Estate specifically identifying the necessary discovery, the Estate "was not prejudiced by staying discovery pending the City's motion for Summary Judgment."

Accordingly, the circuit court properly exercised its discretion when it granted the City's motion to stay discovery.

II.  *Summary Judgment – Recreational Immunity*

¶19    We review a grant of summary judgment de novo, using the same methodology as the circuit court. ***Hardy v. Hoefferle***, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  The moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  WIS. STAT. § 802.08(2).  In evaluating summary judgment materials, we view the evidence, and reasonable inferences from that evidence, in the light most favorable to the party opposing summary judgment.  ***CED Props., LLC v. City of Oshkosh***, 2018 WI 24, ¶19, 380 Wis. 2d 399, 909 N.W.2d 136.

¶20    "Recreational immunity under WIS. STAT. § 895.52 is a defense that may entitle the moving party to summary judgment" as a matter of law.  ***Milton v. Washburn County***, 2011 WI App 48, ¶7, 332 Wis. 2d 319, 797 N.W.2d 924; *see also **Stann v. Waukesha County***, 161 Wis. 2d 808, 815, 468 N.W.2d 775 (Ct. App. 1991) (application of recreational immunity statute presents question of law). WISCONSIN STAT. § 895.52(4) provides that municipalities, among other governmental units, are not liable for injuries to those who enter their property to engage in recreational activities.  *See **Nelson v. Schreiner***, 161 Wis. 2d 798, 802, 469 N.W.2d 214 (Ct. App. 1991).  There are two exceptions to recreational immunity.  *See **Ervin v. City of Kenosha***, 159 Wis. 2d 464, 479-80, 464 N.W.2d 654 (1991).  In this case, the only exception at issue is for a death or injury caused by "a malicious act or by a malicious failure to warn against an unsafe condition

of which an officer, employee or agent of a governmental body knew." WIS. STAT. § 895.52(4)(b).[3] An act or failure to warn is malicious if it results from hatred, ill will, or a desire for revenge or is inflicted under circumstances where insult or injury is intended. ***Ervin***, 159 Wis. 2d at 483.

¶21 The Estate does not argue that the City acted with hatred, ill will, or a desire for revenge. Rather, it focuses on intent, arguing that an actor intends to

---

[3] WISCONSIN STAT. § 895.52 provides, as material:

> **(2)** NO DUTY; IMMUNITY FROM LIABILITY.
>
> **(a)** Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
>
> **1.** A duty to keep the property safe for recreational activities.
>
> **2.** A duty to inspect the property, except as provided under s. 23.115 (2).
>
> **3.** A duty to give warning of an unsafe condition, use or activity on the property.
>
> ….
>
> **(4)** LIABILITY; PROPERTY OF GOVERNMENTAL BODIES OTHER THAN THIS STATE. Subsection (2) does not limit the liability of a governmental body other than this state or any of its agencies or of an officer, employee or agent of such a governmental body for either of the following:
>
> ….
>
> **(b)** A death or injury caused by a malicious act or by a malicious failure to warn against an unsafe condition of which an officer, employee or agent of a governmental body knew, which occurs on property designated by the governmental body for recreational activities.

injure if it is aware that its conduct is substantially certain to cause injury, even if it does not desire that result. *See Milton*, 332 Wis. 2d 319, ¶11. Under this standard, the Estate claims that the City acted maliciously when it failed to inform Swannie or her mother of the safety rules or warn them of allegedly dangerous features in the Regner Park pond, including a hidden drop-off and poor water visibility. The Estate also claims that the City did not properly hire or train its lifeguards and that the lifeguards did not follow safety procedures, such as swim testing Swannie or properly scanning their zones for any sign of trouble. Viewing these allegations in a light most favorable to the Estate, we conclude that the evidence is insufficient for a jury to conclude that the City or its lifeguards acted with malice.

¶22 In reaching this conclusion, we find *Ervin* and *Milton* instructive. The facts in *Ervin* are similar to the facts in this case. In *Ervin*, two young boys drowned at a public beach owned and operated by the City of Kenosha. *Ervin*, 159 Wis. 2d at 469. The boys were playing in chest-high water when they encountered a steep eight-foot drop-off approximately ten to fifteen feet from the shore. *Id.* at 469-70. The boys could not swim and struggled to say afloat for several minutes. *Id.* at 470. Several bystanders went into the water to rescue the boys after they saw the boys go underwater. *Id.*

¶23 At the time of the drowning, the beach was staffed by four lifeguards employed by the City of Kenosha. *Id.* The City hired the lifeguards without conducting formal interviews or skills testing and did not provide the lifeguards with lifeguarding, first-aid, or rescue training. *Id.* at 471. Despite observing the boys in distress, the lifeguards did nothing for several minutes, going into the water to help the boys only after the bystanders attempted to rescue the boys. *Id.* at 470-71.

11

¶24    The boys' parents sued the City of Kenosha. *Id.* at 471. On summary judgment, they argued, as material, that there was a genuine issue of material fact as to whether the City's conduct was malicious. *Id.* at 479. *Ervin* rejected this argument and upheld summary judgment in favor of the City, concluding that no reasonable view of the undisputed facts would support a finding of maliciousness:

> We conclude that the conduct of the City in negligently hiring and failing to train the lifeguards, the conduct of the lifeguards in negligently giving rescue attempts, and the conduct of both the City and the lifeguards in maintaining and failing to warn of the unsafe drop-off did not rise to the level of "malicious" in this case. Although this conduct may have been negligent or in reckless disregard of the youths' safety, there is no evidence that the deaths were the result of hatred, ill-will, a desire for revenge or inflicted under circumstances where insult or injury was intended.

*Id.* at 484-85; *see also* **Stann**, 161 Wis. 2d at 824-27 (recreational immunity precluded liability for drowning death at county-modified beach where lifeguards failed to act upon learning three-year-old child was missing).

¶25    **Milton** is instructive because it utilized the legal standard in this case—whether conduct is substantially certain to cause injury under the malicious-acts exception to recreational immunity. **Milton**, 332 Wis. 2d 319, ¶¶11-18. In **Milton**, snowmobilers were injured when they collided with a closed gate on a county access trail. *Id.*, ¶6. The snowmobilers sued the county, alleging it was negligent for closing the gate. *Id.* On appeal, the snowmobilers argued the circuit court's grant of summary judgment was improper because the malicious-act exception to recreational immunity applied. *Id.*, ¶16.

¶26    **Milton** used the example of a man firing a bullet into a dense crowd to illustrate an instance where a jury could infer an actor's conduct is substantially

certain to cause harm. *Id.*, ¶12. It explained "[t]he man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it." *Id.* (citation omitted). *Milton* concluded that the county's conduct was not malicious because, unlike firing a bullet into a dense crowd, the county's actions were not certain to cause injury. *Id.*, ¶8.

¶27 Like *Milton*, the City's alleged negligence in lifeguarding and creating and maintaining dangerous features was not certain to cause injury in the same way that firing a bullet into a dense crowd is certain to cause injury. Rather, as in *Ervin*, even if the City's conduct was negligent or in reckless disregard of Swannie's safety, there is no evidence her drowning occurred under circumstances where insult or injury was intended. Ultimately, the Estate's argument boils down to the assertion that the City could have had more features in place to make the Regner Park pond safer. This is insufficient to show that the City or its lifeguards were aware that their conduct was substantially certain to cause Swannie to drown.

¶28 The Estate also contends that the park director's alleged failure to investigate Swannie's drowning is evidence of malice. The Estate alleges the park director's conduct shows the park director's "indifference to [Swannie's] death and evinced intent to sweep aside the circumstances surrounding the events leading to [Swannie's] demise." To support this argument, the Estate points to *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Mutual Insurance Co.*, 146 Wis. 2d 470, 431 N.W.2d 689 (Ct. App. 1988). The Estate's claim fails for two reasons.

¶29 First, *Upthegrove* does not apply to this case. The issue in *Upthegrove* was whether punitive damages were warranted for malicious conduct

13

in a bad faith insurance claim. ***Upthegrove***, 146 Wis. 2d at 480-84. ***Upthegrove*** concluded that there was substantial evidence to support the jury's finding that an insurance company acted with malice or ill will when its investigators lied about what they found in their investigation and destroyed crucial pieces of evidence. ***Id.*** at 483-84. The Estate does not provide any authority providing that the standard for punitive damages in bad faith insurance claims applies to recreational immunity. Moreover, it does not point to any evidence that the park director lied or destroyed evidence.

¶30    Second, viewing the facts in the light most favorable to the Estate, we do not see how the park director's alleged failure to investigate Swannie's drowning *after the fact* is evidence that the park director's conduct was substantially certain to cause Swannie's drowning. *See **Milton***, 332 Wis. 2d 319, ¶18 (closed gate not substantially certain to cause accident). The Estate does not provide any evidence the park director was at the Regner Park pond the day Swannie drowned or had any involvement in the drowning itself. Accordingly, the park director's alleged failure to investigate the circumstances surrounding Swannie's drowning is not relevant to our assessment of whether the City or its lifeguards acted with malice.

¶31    For all of these reasons, the facts viewed in a light most favorable to the Estate, do not establish that the City or its lifeguards acted with malice. Accordingly, the City is immune from liability under WIS. STAT. § 895.52 as a matter of law and we affirm the circuit court's grant of summary judgment.

    *By the Court.*—Judgment affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.