# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP1401**
**2023AP1805**

Cir. Ct. Nos. **2022FA1824**
**2019FA846**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

NO. **2023AP1401**

IN RE THE MARRIAGE OF ANGELA MARIE YADAGIRI
AND NARENDRA YADAGIRI:

VISHNU CHAITANYA ALAMURI,

APPELLANT,

V.

ANGELA MARIE YADAGIRI AND NARENDRA YADAGIRI,

RESPONDENTS.

---

No. 2023AP1805

IN RE THE SUPPORT OR MAINTENANCE OF R.K.Y.:

VISHNU CHAITANYA ALAMURI,

    APPELLANT,

  V.

ANGELA M. YADAGIRI AND NARENDRA YADAGIRI,

    RESPONDENTS.

APPEAL from orders of the circuit court for Dane County: STEPHEN E. EHLKE and JACOB B. FROST, Judges. *Affirmed*.

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Vishnu Chaitanya Alamuri appeals the circuit court's denial of his motions to intervene in two actions, for child support and divorce, as a matter of right pursuant to WIS. STAT. § 803.09(1) (2021-22) and, in the alternative, through application of the circuit court's discretion under § 803.09(2).[1]  Angela Krattiger and her now ex-spouse Narendra Yadagiri are

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

parties in both actions, and both actions involve the same child, R.K.Y.[2] R.K.Y. was born during the marriage of Krattiger and Yadagiri, but they allege that Alamuri is R.K.Y.'s biological father. Alamuri also appeals the denial of his motions to reopen the court rulings, made in each of the two actions, that Krattiger and Yadagiri rebutted Wisconsin's statutory presumption that Yadagiri is R.K.Y.'s legally recognized father due to his marriage to Krattiger. *See* WIS. STAT. § 891.41. More specifically, Alamuri seeks to intervene in order to attempt to persuade the court to restore the presumption that Yadagiri is the legally recognized father.

¶2      We conclude that the circuit court did not err by denying Alamuri's motion to intervene as a matter of right because Alamuri fails to provide a legally supported argument articulating how, absent intervention, he will be impeded or impaired in protecting an interest that is sufficiently related to those actions. *See* WIS. STAT. § 803.09(1). Regarding permissive intervention, we conclude that Alamuri's motions fail as a matter of law because he fails to identify a question of law or fact that is common between Alamuri's claim or defense and the Dane County actions. Identification of a common question of law or fact is required before a circuit court could exercise its discretion to admit Alamuri as a party. *See* § 803.09(2).[3]

---

[2] Krattiger took the surname Yadagiri as a result of the marriage, but was granted a return to the Krattiger surname in the judgment of divorce. For ease of reference, we will refer to Krattiger by her current name.

[3] Given our conclusions on the intervention issues, we do not separately address Alamuri's motions to reopen. He requests as relief that we direct the circuit court on remand to address the substance of the motions following his intervention. But he does not challenge the circuit court's reasoning that, if intervention is not merited, the court has no reason to address the motions to reopen. He also does not argue that there is any basis for this court to address his motions to reopen before his motions to intervene are resolved.

¶3     Accordingly, we affirm.

## BACKGROUND

¶4     Krattiger and Yadagiri were married in December 2018. R.K.Y. was born two months later. This means that Yadagiri is statutorily presumed to be R.K.Y.'s legally recognized father, unless and until the presumption is rebutted. *See* WIS. STAT. § 891.41.[4]

¶5     In May 2019, the Dane County Child Support Agency commenced a child support action, with Krattiger named as petitioner and Yadagiri as respondent.[5] In July 2019, the circuit court commissioner filed a judgment setting child support at $0, based on an agreement between Krattiger and Yadagiri.

---

[4] WISCONSIN STAT. § 891.41(1) addresses, under certain circumstances, who is considered to be "the natural father of a child," meaning the legally recognized father. "A man is presumed to be the natural father of a child if," as pertinent here, "[h]e and the child's natural mother are … married to each other and the child is … born after marriage and before the granting of a decree of legal separation, annulment or divorce between the parties." Sec. 891.41(1). This presumption "is rebutted," "[i]n a legal action or proceeding"

> by results of a genetic test … that show that a man other than the man presumed to be the father under sub. (1) is not excluded as the father of the child and that the statistical probability of the man's parentage is 99.0 percent or higher, even if the man presumed to be the father under sub. (1) is unavailable to submit to genetic tests.

Sec. 891.41(2); *see also* WIS. STAT. § 767.001(1m) (defining "genetic test" in this context). We refer to the presumption under § 891.41(1) as the "marital presumption."

[5] Circuit Court Commissioner Mark Fremgen and Judge Jacob Frost presided over the child support action. Commissioner Brian Asmus and Judge Stephen Ehlke presided over the divorce action. Judges Frost and Ehlke issued a joint order denying Alamuri's motions to intervene in each action.

¶6    In April 2022, Krattiger, acting pro se, apparently attempted to request that the child support judgment be reopened, but this was rejected by the circuit court commissioner in June 2022.  The commissioner made findings that included the following:  Krattiger "attempted to file a paternity action … and name a different person as the father," apparently in Dane County Circuit Court, but this was dismissed for a lack of personal jurisdiction; and Krattiger "moved to North Carolina and has sought a finding of paternity" in the courts of that state, but there had been no order determining that the marital presumption of paternity was rebutted.

¶7    Krattiger through counsel formally moved to reopen and vacate the child support judgment in June 2022.  In support, Krattiger submitted what purported to be genetic test results for Alamuri and Yadagiri, along with her own affidavit averring that Alamuri is R.K.Y.'s biological father, based on the test results and "a physical encounter" that she had with Alamuri before marrying Yadagiri.  The court commissioner appointed a guardian ad litem ("GAL") to represent R.K.Y.'s interests in the child support action.  The GAL recommended that the commissioner deny Krattiger's request and uphold the marital presumption that Yadagiri is the legally responsible father.  The commissioner agreed with this recommendation, denying Krattiger's motion to reopen and vacate.[6]

---

[6] In November 2022, Krattiger sought an "emergency hearing" in the child support action, apparently attempting to relitigate her motion.  The court commissioner denied this motion based on the failure of any party to timely seek de novo review in the circuit court of the commissioner's order rejecting Krattiger's motion.  In December 2022, days after filing a petition for legal separation from Yadagiri, Krattiger moved for de novo review of commissioner's ruling in the child support action.  This motion was denied by the circuit court.

¶8      Krattiger filed for a legal separation from Yadagiri in December 2022 in Dane County Circuit Court, commencing what would later become the proceeding that we refer to as "the divorce action." The petition listed R.K.Y. as a child born during the marriage and requested a determination that the marital presumption has been rebutted that Yadagiri, as the spouse of the mother at the time of birth, is the legally recognized parent. Krattiger and Yadagiri submitted a marital settlement agreement that sought a ruling that the marital presumption had been rebutted. The agreement stipulated that Yadagiri would assume no financial or care responsibilities to Krattiger or to the child.

¶9      In February 2023, the circuit court in the divorce action appointed a GAL for R.K.Y., choosing a different attorney from the one who served as GAL in the child support action. This GAL recommended that the court in the divorce action rule that the presumption of Yadagiri's paternity was rebutted. On March 10, 2023, the court issued the following ruling:

> [B]ased on the guardian ad litem's recommendations …, [the] agreement of the parties, and the reasons set forth on the record, the marital presumption of paternity for the marital child is rebutted, pursuant to WIS. STAT. § 767.803[7] and [WIS. STAT.] § 891.41. Narendra Yadagiri is determined not to be the father of [R.K.Y].

¶10     In March 2023, Krattiger filed a letter with the circuit court in the child support action requesting that the court vacate the child support order naming Yadagiri. The letter noted that the court in the divorce action ruled that the marital presumption had been rebutted. However, the letter further represented

---

[7] Neither party addresses WIS. STAT. § 767.803 as bearing on Alamuri's motions for intervention. Section 767.803 addresses the status of an otherwise nonmarital child of parents who "enter in a lawful marriage or a marriage which appears and they believe is lawful," which causes the child to be deemed a marital child. It has no bearing on our resolution of this appeal.

that the trial court in a North Carolina-based paternity action had taken the position that it would not proceed in that North Carolina action until the Dane County child support order had been "fixed," apparently meaning altered to reflect the ruling in the Dane County divorce action that the marital presumption had been rebutted.

¶11  The circuit court treated Krattiger's request as a motion to reopen the child support judgment under WIS. STAT. § 806.07.  The court granted the motion on the ground that the court deemed it to be "no longer equitable that the judgment in [the child support] case should have prospective application." *See* § 806.07(1)(g).  Toward this end, on April 21, 2023, the court issued a written order stating that the child support judgment naming Yadagiri as the legally responsible father was "a legal nullity" and declaring that the child support judgment was "void and of no further effect going forward," having been superseded by the judgment of divorce and the legal findings of that court.

¶12  On May 8, 2023, the court commissioner in the divorce action granted a judgment of divorce to Krattiger and Yadagiri.

¶13  On June 21, 2023, Alamuri made limited appearances in both the child support action and the divorce action in order to move to intervene as a matter of right under WIS. STAT. § 803.09(1), or in the alternative requesting permissive intervention under § 803.09(2).  Alamuri also moved in each action to reopen the pertinent orders that had determined that the marital presumption was rebutted.  Specifically, in the divorce action, Alamuri sought to vacate the March 10, 2023 order ruling that the marital presumption was rebutted.  In the child support action, he sought to vacate the April 21, 2023 order declaring the

child support judgment naming Yadagiri as the legally responsible father to be a nullity.

¶14    This brings us to the order that Alamuri challenges in this appeal. Authored jointly by the two judges presiding over the child support and divorce actions, the order denied Alamuri's motions to intervene in each action. In this order, the circuit court also denied the motions to reopen "as moot" based on its decisions to deny the motions to intervene.

¶15    Alamuri appeals. Krattiger and Yadagiri file a joint response brief on appeal.

## DISCUSSION

¶16    Alamuri argues that the circuit court erred in denying his motions to intervene as a matter of right under WIS. STAT. § 803.09(1) and that it erroneously exercised its discretion in denying him permissive intervention under § 803.09(2). Krattiger and Yadagiri argue that Alamuri's motions fail to meet the requirements for intervention under § 803.09(1) or (2).

¶17    We review de novo whether Alamuri meets the elements for intervention as a matter of right, with the exception of one element that is not pertinent to our analysis on the mandatory intervention issue.[8] *See Town of Mentor v. State*, 2021 WI App 85, ¶18, 400 Wis. 2d 138, 968 N.W.2d 716.

---

[8] The determination of one element of both the mandatory and permissive modes of intervention, timeliness, is left to the discretion of the circuit court. *See Sewerage Comm'n of City of Milwaukee v. DNR*, 104 Wis. 2d 182, 186, 311 N.W.2d 677 (Ct. App. 1981). Because we resolve Alamuri's motions for intervention based on elements that we review de novo, we do not address the timeliness element, and, in any case, the circuit did not make any findings as to the timeliness of Alamuri's motions.

(continued)

8

¶18 Regarding permissive intervention, a circuit court generally "has discretion to decide whether a movant may be permitted to intervene." *Helgeland v. Wisconsin Muni's*, 2008 WI 9, ¶120, 307 Wis. 2d 1, 745 N.W.2d 1. But, as stated in an unpublished but authored opinion that we consider persuasive, the unambiguous language of WIS. STAT. § 803.09(2) establishes that a circuit court's discretion on this topic is to be exercised only in those instances in which "'the movant's claim or defense and the main action have a question of law or fact in common.'" *See Milwaukee Mile Holdings, LLC v. Wisconsin State Fair Park*, No. 2010AP1533, unpublished slip op., ¶¶27-28 (quoting *Helgeland*, 307 Wis. 2d 1, ¶120) (stating that a movant for intervention "is not entitled to permissive intervention as a matter of law," and on this basis declining to remand to circuit court to exercise its discretion on permissive intervention, an issue the circuit court had not reached). Thus, we review de novo whether Alamuri has met the legal requirement that there is a common question of law or fact. *See Helgeland v. Wisconsin Muni's*, 2006 WI App 216, ¶38, 296 Wis. 2d 880, 724 N.W.2d 208.

## I. Intervention as a Matter of Right

¶19 "[A] movant for intervention as a matter of right 'must satisfy' each of the following elements: (1) the motion is timely; (2) 'the movant claims an interest sufficiently related to the subject of the action'; (3) 'disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest'; and (4) 'the existing parties do not adequately represent the

---

More generally, we note that the analysis of a motion for mandatory intervention can "depend on factual findings made by the circuit court that we will not disturb unless the findings are clearly erroneous." *See Town of Mentor v. State*, 2021 WI App 85, ¶18 n.7, 400 Wis. 2d 138, 968 N.W.2d 716. In this case, however, we do not discern findings of the circuit court that are relevant to the application of WIS. STAT. § 803.09, and the parties do not call our attention to any.

movant's interest.'" ***Town of Mentor***, 400 Wis. 2d 138, ¶14 (quoting ***Helgeland***, 307 Wis. 2d 1, ¶¶38-39); *see also* WIS. STAT. § 803.09(1).[9]  These "criteria need not be analyzed in isolation from one another, and a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well." ***Helgeland***, 307 Wis. 2d 1, ¶39 (footnotes omitted).  "[O]ur analysis is generally to be 'holistic, flexible, and highly fact-specific.'" ***Town of Mentor***, 400 Wis. 2d 138, ¶18 n.7 (quoting ***Helgeland***, 307 Wis. 2d 1, ¶40).  The intervention statute "attempts to strike a balance between two conflicting public policies." ***Helgeland***, 307 Wis. 2d 1, ¶40.  The balance recognizes that "[t]he original parties to a lawsuit should be allowed to conduct and conclude their own lawsuit" but also that "persons should be allowed to join a lawsuit in the interest of the speedy and economical resolution of controversies." *Id.*, ¶40 (footnotes and quoted sources omitted).  We conclude that it is dispositive that Alamuri fails to meet the second and third elements of mandatory intervention, which involve the movant's claimed interest and how the proceedings in the underlying actions effect the movant's ability to protect that interest.

¶20  No precise test exists for determining whether a potential intervener has a sufficiently related interest in the subject of the action. *Id.*, ¶43.  Instead, "[t]he relevant inquiry … is … not whether a prospective party has a legal or

---

[9] Intervention as a matter of right is provided for under WIS. STAT. § 803.09(1), which in its entirety states:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

legally protected interest in the subject of an action, but whether the person or entity has 'an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment.'" ***Dairyland Greyhound Park, Inc. v. McCallum***, 2002 WI App 259, ¶15, 258 Wis. 2d 210, 655 N.W.2d 474 (quoting ***City of Madison v. WERC***, 2000 WI 39, ¶11 n.9, 234 Wis. 2d 550, 610 N.W.2d 94) (second alteration in ***Dairyland***); *see also* ***Helgeland***, 307 Wis. 2d 1, ¶45 (noting that a basis to intervene as of right is "when the movant needs 'to protect a right that would not otherwise be protected in the litigation'" (quoting ***City of Madison***, 234 Wis. 2d 550, ¶11 n.8)).  Thus, the interest claimed by the movant cannot be merely "remote[]" in its relationship "to the subject of the action."  *See* ***Helgeland***, 307 Wis. 2d 1, ¶45.  Nor can the potential effect of resolving the main action be merely speculative in its relationship with the movant's claimed right.  *See* ***id.***, ¶¶53, 66.

¶21    When we review a denial of a motion to intervene as of right, we do not seek to resolve the merits of the underlying action.  *See* ***id.***, ¶¶9-10.  But in some cases the merits are relevant to particular elements that must be shown to establish intervention as of right.  More specifically, the merits can be relevant to, as pertinent here, whether a movant has established that, given the movant's claimed interest, the movant will "gain or lose by direct operation of the judgment," or that the interest will be impaired or impeded absent intervention. *See* ***Town of Mentor***, 400 Wis. 2d 138, ¶¶24, 34-35 (in WIS. STAT. ch. 980 proceedings for placement of a committed person in a town's boundaries, the merits of the arguments that the town sought to bring to the case were relevant in assessing how closely related the town's interest in the proceedings was).  By extension, the particular arguments that the movant seeks to bring to the case can also be relevant.  *See* ***Hendrick v. Hendrick***, 2009 WI App 33, ¶¶19, 21, 316

Wis. 2d 479, 765 N.W.2d 865 (noting that it weighed against intervention that the particular result sought by the movant through intervention was "immaterial" to his interests in the underlying action).

¶22    Aspects of Alamuri's briefing are unclear, but we understand him to identify his interest in intervention as follows:  seeking to persuade the circuit court to vacate the orders that the marital presumption has been rebutted because "those orders are directly related to paternity cases" that Krattiger has attempted to bring and may yet bring against Alamuri as the alleged father of R.K.Y.  Thus, when interpreted in the context of his other arguments, we understand Alamuri to claim an interest in defending himself in paternity proceedings against him.  He contends that the rebuttal of the marital presumption in both the child support and divorce actions impedes and impairs his ability to protect his interest because North Carolina paternity-related proceedings against Alamuri "will only proceed … if" the marital presumption as to Yadagiri is rebutted.  Although not stated clearly, Alamuri may also be concerned that, if he is not able to restore the presumption in the Dane County actions, he will be unable to advance arguments that Krattiger has failed to prove that Alamuri is the biological father with admissible evidence, or in the alternative, to show that she is equitably estopped from arguing that anyone other than Yadagiri is R.K.Y.'s legally responsible father.  *See **Randy A.J. v. Norma I.J.***, 2004 WI 41, ¶31, 270 Wis. 2d 384, 677 N.W.2d 630 (mother and biological father equitably estopped from seeking a determination that the marital presumption is rebutted).

¶23    However, Alamuri fails to provide a legally supported argument establishing how the rebuttal of the marital presumption *as to Yadagiri* will affect his ability to defend himself in any paternity-related proceedings in North Carolina or any other jurisdiction, and we reject the argument on that basis.  While it is

undisputed that Wisconsin's marital presumption regarding Yadagiri shielded Alamuri in the past from paternity-related proceedings in North Carolina, before the Dane County rebuttal rulings, he does not attempt to explain that he will be meaningfully impaired in defending himself in a paternity proceeding in a different state in light of those rulings. That is, it is unclear how his intervention in Wisconsin to make the arguments he seeks to make about the marital presumption—as opposed to whatever attempts he might make to mount paternity defenses in actions in other jurisdictions—would be "[]material" to his overall interests which are not the subject of the Dane County proceedings. *See Hendrick*, 316 Wis. 2d 479, ¶21.

¶24 Expanding on this last, Alamuri fails to show how the order principally at issue here, the April 2022 ruling in the divorce court deeming the marital presumption rebutted, prevents him from defending himself in future paternity actions. To repeat, this order "determined" that Yadagiri was not R.K.Y.'s father, without making any explicit findings regarding Alamuri. This was not an order adjudicating Alamuri to be R.K.Y.'s legally responsible father, or a finding that he is the biological father, or setting forth any legal rights or obligations of Alamuri. *See* WIS. STAT. §§ 767.80(5)-(5m) (discussing procedural requirements for paternity actions), 767.89(3) (discussing contents of paternity orders).

¶25 Alamuri emphasizes that the circuit court, in addressing the marital presumption regarding Yadagiri, appeared to credit the submissions of the divorce action GAL. This included the GAL's assertion that the genetic test results purporting to show that Alamuri is the biological father, submitted by Krattiger, were accurate, in addition to other factual representations regarding R.K.Y.'s relationships with Yadagiri and Alamuri that Alamuri now contends are

incomplete or contestable. However, Alamuri does not develop an argument that he could be bound by any specific implied finding or conclusion of the Dane County circuit court. Further, he fails to more generally explain the adverse effects for him that are likely or even possible to occur as a result of the Dane County actions in a court of any other jurisdiction. Thus, it is not clear why Alamuri would not be as free as he ever was to argue in any jurisdiction that, whoever the biological father is, that person is not Alamuri, or from arguing in the alternative that Krattiger is estopped from claiming that anyone other than Yadagiri is legally responsible to support R.K.Y.

¶26   The closest Alamuri comes to filling in the gaps in his argument for mandatory intervention are his allusions to uniform acts adopted by Wisconsin and North Carolina regarding the effect that custody determinations or child support orders that are made in one state can have in other states. *See* WIS. STAT. chs. 769 and 822; N.C. GEN. STAT. chs. 50A and 52C (2023). But he fails to identify any authority supporting the proposition that the pertinent Wisconsin orders determining that the marital presumption was rebutted would impede his ability to adequately pursue whatever legal rights he might validly claim or legal obligations he might validly disavow in other jurisdictions.

¶27   Notably, in a context that is somewhat similar to this one, we have stated that "absent extraordinary circumstances … the proper parties to a divorce action are the husband, wife, and children of the marriage." *See **Hendrick***, 316 Wis. 2d 479, ¶22; *see also **id.***, ¶¶1, 5, 18-19 (affirming denial of motion to intervene into a divorce by biological father of the marital child who had already been adjudicated father in a separate paternity proceeding). This reflects the observation that, in the divorce context, the balance of public policies struck by the intervention statute, WIS. STAT. § 803.09, will often tilt in favor of the original

14

parties being allowed to conclude their lawsuit without intervention by others because the interests of others in divorce proceedings will typically be at least somewhat remote from the purposes and stakes of those proceedings. *See Hegeland*, 307 Wis. 2d 1, ¶40.[10]  In *Hendrick*, the movant was an adjudicated father; he had already lost the argument that another man should be legally recognized as the child's father.  The movant's interest in intervening in the divorce was therefore merely "parochial," aiming only to "muddy[] the waters." *See Hendrick*, 316 Wis. 2d 479, ¶22.  Alamuri emphasizes that, unlike the movant for intervention in *Hendrick*, he has not been adjudicated R.K.Y.'s father.  In this sense, he may mean to argue that the circumstances here are, to use the language of *Hendrick*, "extraordinary" enough to justify intervention based on this

---

[10] To be clear, we do not suggest that WIS. STAT. § 803.09 is categorically inapplicable in the divorce context and do not interpret *Hendrick* to require otherwise.  *See Sengstock v. San Carlos Apache Tribe*, 165 Wis. 2d 86, 93, 477 N.W.2d 310 (Ct. App. 1991) (applying § 803.09(1) to a child custody proceeding "[b]ecause neither ch. 767 nor [WIS. STAT.] ch. 822 … prescribe[] a different procedure for intervention"); WIS. STAT. § 767.201; WIS. STAT. § 801.01(2).  We applied the intervention statute in *Hendrick*.  *See Hendrick v. Hendrick*, 2009 WI App 33, ¶¶19-21, 316 Wis. 2d 479, 765 N.W.2d 865.

We went on to observe in *Hendrick* that constitutional case law and statutorily expressed public policy demonstrated reluctance to allow third parties to participate in "family matters including divorce proceedings."  *See Hendrick*, 316 Wis. 2d 479, ¶22 n.5.  However, as noted above, mandatory intervention does not require a legally enforceable right per se, but rather a sufficiently related interest in proceedings.  *See* WIS. STAT. § 803.09(1) (requiring movant to "claim[] an interest").  In this light, our point in *Hendrick* is best understood as reinforcing the importance for a movant seeking to intervene in a divorce action to clearly articulate a basis for intervention that involves a common issue of fact or law.

Moreover, we observe that those who are alleged to be fathers *do* have legally enforceable rights afforded to them under WIS. STAT. ch. 767, subch. IX.  The adjudicated father in *Hendrick* had already vindicated those rights when seeking to intervene in a divorce.  *See Hendrick*, 316 Wis. 2d 479, ¶¶6-8, 21 ("the paternity action is where [the movant]'s battle had to be fought; it was and [the movant] lost").  In contrast here, Alamuri fails to show that the rebuttal of the marital presumption in Krattiger and Yadagiri's Dane County cases has sufficiently implicated any such right or related interest (in Wisconsin or elsewhere) to justify intervention for the reasons discussed in the text.

distinction. But Alamuri again fails to develop the point with a legally supported argument demonstrating that he is entitled to intervention.[11]

## II. Permissive Intervention

¶28 Permissive intervention is governed by WIS. STAT. § 803.09(2), which states in pertinent part that:

> Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Unlike intervention as a matter of right, which requires the movant "to be necessary to the adjudication of the action, permissive intervention requires a person to be merely a proper party." *See City of Madison*, 234 Wis. 2d 550, ¶11 n.11. At the same time, however, permissive intervention retains the common question requirement. *See Helgeland*, 296 Wis. 2d 880, ¶38.

¶29 Alamuri flatly asserts that the same arguments that he makes regarding intervention as of right establish that there is a common question of law or fact between his defense in paternity proceedings against him and the actions in which he seeks intervention. But he does not develop any argument. This lack of development is fatal on the permissive intervention issue, given the standards

---

[11] In his reply brief, Alamuri references various procedural details and makes various allegations in an apparent effort to support his claimed interest in intervention, but without clearly connecting these references to legal standards regarding intervention elements that are dispositive here. We need not detail these references, but we note only that in the absence of a developed argument explaining why they relate to the pertinent legal standards, they do not alter our analysis of the intervention as of right issue.

noted above regarding the common question requirement. *See Milwaukee Mile Holdings*, No. 2010AP1533, ¶29 (rejecting movant's arguments for permissive intervention for reasons also supporting rejection of mandatory intervention when movant has relied on same arguments for both).

¶30    At scattered points in Alamuri's briefing, there are references to factual or legal considerations that are generically related to the topic of who should be recognized as R.K.Y.'s legally responsible father. But for the same reasons noted above, this does not present a legally supported argument explaining how paternity-related proceedings regarding Alamuri will address common questions of law or fact with those addressed in the circuit court's succinct orders regarding the rebuttal of the marital presumption as to Yadagiri.

¶31    Alamuri directs us to what he argues are numerous flaws in the circuit court's order denying his motions for intervention. Assuming that Alamuri has established that the court has erroneously exercised its discretion, he does not alter our conclusion on de novo review that he fails to develop a supported argument identifying a common question of law or fact allowing the court to permit his intervention. *See Helgeland*, 296 Wis. 2d 880, ¶38; *see also Milton v. Washburn Cnty.*, 2011 WI App 48, ¶8 n.5, 332 Wis. 2d 319, 797 N.W.2d 924

(court of appeals may affirm circuit court when it reaches the right result for what may be incorrect reasons).[12]

## CONCLUSION

¶32 For all of these reasons, we affirm the circuit court's denial of Alamuri's motions for intervention under WIS. STAT. § 803.09.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[12] Alamuri's initial brief on appeal does not comply with WIS. STAT. RULE 809.19(8)(bm), which provides that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover." This rule has recently been amended. *See* S. CT. ORDER 20-07 (eff. July 1, 2021). The reason for the amendment is that briefs are now electronically stamped with page numbers in this manner when they are accepted for e-filing. As our supreme court explained, the new rule ensures that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. We appreciate that counsel for Alamuri complied with this rule in the reply brief, but we ask counsel to be mindful of this rule in all future briefs submitted to this court.